McIlvaine, J.
Cornelia Jones died testate in March, 1851. In her last will and testament, executed on the 6th of February preceding, she made provision for her daughter Lucy, who was idiotic and helpless, as follows:
“1. I give and bequeath to my husband, Ira Jones, the house and lot in Youngstown now occupied by us, being the same lot conveyed to me by my mother, Lucy Edwards, late of Youngstown, deceased, by deed bearing date September 15, 1840, for and during the natural life of the said Ira Jones, upon the condition that the said Ira Jones, in a suitable and proper and fatherly manner, provide for and take care of our unfortunate daughter, Lucy Jones, during their *653 joint lives.. And if in the judgment of the said Ira Jones, at any time after my decease, it shall be necessary to the comfortable support of either the said Ira Jones, or Lucy Jones, that the aforesaid house and lot be sold, then I do hereby authorize and empower him, the said Ira Jones, to sell and convey the same in fee-simple, the same as he would do were the said premises bequeathed to him in fee-simple by me; and in that case, my will is that the avails of the said property sold be applied- in part, or in whole, as the circumstances of the said Ira and Lucy, or of either of them, may require, by the said Ira Jones to his and her comfortable support, according to his best judgment.
“In ease the said Lucy Jones shall survive her father, the said Ira Jones, and the premises above described be then unsold at the time of his death, then I give and bequeath to our daughter, Cornelia Jones, in fee-simple, the above-described premises upon the same conditions as above imposed upon my husband, the said Ira Jones; provided, that the said Cornelia shall then be in suitable circumstances, and is willing to take upon her the charge of the said Lucy. But should the said Cornelia then not be in suitable circumstances, or be unwilling to take the care and support of the said Lucy upon herself, then—
“ I give and bequeath the aforesaid premises unto our son, Albert Jones, upon the same conditions as aforesaid. And should he not take upon him the charge aforesaid, then—
“I give and bequeath these premises to our son, Ira Jones, upon the same conditions; and if all these persons named shall fail to accept the bequest, and take upon them the charge of the said Lucy as aforesaid, then—
“ I ordain that the said property shall be applied under the instruction of the proper legal authority to the comfortable maintenance and support of the said Lucy Jones.
“ In case that the said Lucy shall survive her father, the said Ira Jones, and at the time of his death the property aforesaid has been sold, then—
“I will and ordain that such portion of the avails of the *654 said property as shall remain unexpended, shall .be offered to the aforesaid Cornelia Jones, to be faithfully applied by her to the comfortable maintenance and support of the said Lucy Jones; and if the said Cornelia be not in suitable circumstances to take this charge, or decline to accept the property on these conditions, then—
“ I ordain that the same tender be to our son, Albert Jones; and if he decline its acceptance and charge, then—
“ That it be offered on the same terms to our son, Ira Jones; and if all decline the property and charge, then I ordain that the proper legal authority take charge of the property, and faithfully apply all of it to the comfortable support and maintenance of our said daughter, Lucy Jones.”
The only other provision in the will was a devise, in trust, for the use of her only other daughter, Cornelia, an infant, about sixteen years of age.
The testatrix had no children other than the four named in the will, all of whom survived her. Albert, at the date of the will, resided in the State óf Indiana, where he was established in business.
The husband relict of the testatrix accepted the devise in his favor, and occupied the house and lot as a home for himself and daughter from the death of his wife until his own death in June, 1852. During this period he provided for and took care of Lucy, without exercising the'power of sale conferred upon him by the will. All the children survived him. After his death, Cornelia declined to take upon herself the care and support of Lucy, and thereupon Albert, in pursuance of his mother’s will, accepted the bequest, and took upon himself the charge of Lucy, and continued to care for and support her until March, 1857, at which time he died, insolvent, arid without having made any provision for the future support of Lucy.
In the meanwhile, however — to wit, on the 16th of November, 1852 — Albert conveyed the house and lot in Youngstown, by deed of general warranty, to the defendant, Jonathan Warner, in exchange for other real estate situate in the State of Indiana. Afterward and before the *655 commencement of this action, this property, in parcels, was conveyed to the other defendants herein. From November, 1852, to the commencement of the action, Warner and those holding under him have enjoyed the use of the property, and are now called upon to account to the plaintiff, as trustee of Lucy, for the rents and profits of the estate.
If the title of Albert to this property, at the date of hie conveyance to Warner, was absolute, in law and equity, or if it became so at any subsequent time, then the estate of Warner, under his deed of general warranty, is also absolute, and neither he nor those holding under him can be called upon to account. ,
What, then, is the character of the estate which Albert took under the will ?
The devise to him was “ in fee simple,” upon the same conditions that had been imposed upon his father as devisee for life : and those conditions were, that he, in a suitable, proper, and fatherly manner, would provide for and take care of Lucy during their joint lives. These were conditions subsequent, and Albert’s estate was subject to be divested upon his failure to perform them, or, at least, it was charged with the support of Lucy, to the extent named in the conditions. How, then, stands this case ? According to the special' findings of fact, Albert, after the death of his father, did provide for and take care of Lucy, at his own home and as a member of his own family as long as he lived. No complaint is made as to the manner in which she was cared for during this period. It is true, that during this time Cornelia was also a member of Albert's family, and assisted in caring for her unfortunate sister without compensation; but this fact does not tend to show that Albert was derelict in the discharge of the duties imposed upon him by the will. Now, if the conditions upon which Albert held his estate were identical with those imposed upon his father as devisee for life, it is quite certain that they have been fully performed, and therefore the estate in Albert’s grantee and his assigns has become absolute, both in law and equity.
*656 The devise to Albert, however, contained a condition not imposed upon his father. Upon the happening of the contingencies named — to wit, the death of the father without a sale of the property having been made, Lucy surviving, and Cornelia declining to take upon herself the charge of Lucy — the property was devised to Albert upon the same conditions which had been imposed upon his father, provided he would take upon himself the care and support of Lucy. Here was a personal assumption of the charge of Lucy required of Albert as a condition precedent, a condition to be performed before the devise vested at all.
The object of the testatrix was not to set apart a fund out of which the mere physical wants of Lucy might be supplied, but to secure for her a sister’s or a brother’s care; and to this end she proposed to reward the sister or-brother who would take upon her or himself the personal charge of their unfortunate sister, by a devise of this property, subject only to the conditions which had been imposed upon her husband as devisee for life.
After tendering this property to Cornelia, Albert, and Ira in the order named, and upon the same conditions both subsequent and precedent, the will provides: “And if all these persons named shall fail to accept the bequest, and take upon them the charge of said Lucy as aforesaid, I ordain that the said property shall be applied under the instructions of the proper legal authority to the comfortable maintenance and support of the said Lucy Jones.” "When the sister and brothers should refuse to take upon themselves the care of the unfortunate Lucy, then, and not till then, did the testatrix declare a trust in this property in favor of Lucy.
It is not necessary to inquire as to the extent of this undertaking either in a legal or moral sense, which was intended to be assumed by Albert before the estate could vest in him, for the reason, as I understand the will, it was the undertaking itself, and not the performance of it, that constituted this condition; hence, having taken upon himself the charge of Lucy, at the time, and in the manner *657 contemplated by the will, the estate vested in Albert, subject to be defeated only in the event that he should fail to-perform the conditions named in the devise to his father, to wit, to provide for and take care of Lucy in a proper manner during their joint lives.
The foregoing view of the case, in my opinion, entitles the defendants to a judgment in their favor.
If it be conceded, however, that the property devised to-Albert was intended by the testatrix to be charged with the maintenance of Lucy beyond the letter of the conditions named, that an equitable right or interest in the property was created in her favor for her support and maintenance during life, and that such right is paramount to the estate-given therein to Albert (and some of my brethren think that such is the true construction of the will), still, we all agree that, as against these defendants, the title must beheld to be discharged from the equities created in favor- of Lucy, if, under the will, a power to sell the property was conferred, upon Albert.
Upon a fair construction of the whole will, we think an absolute power to sell was conferred upon him, which he was authorized to exercise at any time after the devise to him took effect.
1. The property was devised to him in fee-simple in terms; and it is quite clear that the testatrix understood those terms to confer an absolute power of sale. In conferring the power to sell upon her husband, which unquestionably was intended to be a power to grant an indefeasible and unincumbered title, she uses the following words: “ to sell and convey the same in fee simple, the same he would do were the premises bequeathed to him in fee-simple by me.”
2. Before the happening of the contingencies upon which the devise to Albert could vest, an authority to sell was. conferred upon the husband ; and after the happening of those contingencies, if the several children, in the order-named, should refuse to take upon themselves the charge of Lucy, a sale was authorized under the instruction of the *658 proper legal authority: so that it does not appear that the testatrix intended or desired that, in any event, the premises should be preserved from sale.
3. It can scarcely be doubted that the testatrix, by requiring Albert “to take upon himself the care and support of Lucy,” intended to secure from him a promise to contribute his personal means and property to her maintenance to the extent they might be needed; and certainly she intended that the whole of this property should be applied to that purpose, if the wants of Lucy should make such application necessary.
4. And lastly, when we look to the circumstances as they •existed at the time the will was made, viz., the residence of Albert in the State of Indiana; the situation of the property in this state; the dilapidated condition of the property; that its yearly rental value did not exceed one hundred dollars, and the insufficiency of the rents to meet the probable expense of supporting Lucy, we have no reasonable doubt that the testatrix intended (and that the will fairly expresses such intent) to invest Albert with power to sell the property, at his discretion, fully discharged of all liens or •equities that might be asserted in Lucy’s favor, so long as "he property remained unsold.

jPetition dismissed at the costs of plaintiff, and cause remanded for execution.